UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

DERICK DOUGLAS,

                        Plaintiff,

    -against-

COUNTY OF ERIE; ERIE COUNTY SHERIFF'S
OFFICE; ERIE COUNTY HOLDING CENTER;
CLASSIFICATION OFFICER GANCI (#1239);
BOOKING DEPUTY D. ROTH (#1425); and JOHN
and JANE DOES #1-99,

                            Defendants.

------------------------------------------------------------------X

25 Civ. 406 (LJV)(HKS)

**AMENDED COMPLAINT
WITH JURY DEMAND**

       Derick Douglas (hereinafter "Plaintiff"), by and through their[1] attorneys, Held & Hines

LLP, by way of Complaint, hereby makes the following allegations against the County of Erie; the

Erie County Sheriff's Office; the Erie County Holding Center; Classification Officer Ganci

(#1239); Booking Deputy D. Roth (#1425); and John and Jane Doe 1-99 (collectively

"Defendants"):

## **PRELIMINARY STATEMENT**

       1.     Plaintiff commences this action pursuant to 42 U.S.C. §1983 seeking compensatory

and punitive damages against all defendants for violating their constitutional rights while acting

under color of law, together with reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988.

       2.     In or about February 2024, Plaintiff was confined to Defendants' custody, control,

and care at the Erie County Holding Center, located in Buffalo, New York. Despite Plaintiff being

an at-risk person in custody due to prior incidents of sexual victimization while in custody, their

---

[1] Plaintiff identifies as transgender, and as such, Plaintiff's preferred pronouns are "they" and "their."

transgender status, and other risk factors that placed Plaintiff at heightened risk of sexual victimization, Defendants assigned Plaintiff to a cell in the general population mental health unit. Predictably, on or about February 15, 2024, Plaintiff was raped by an inmate. Plaintiff reported this incident to Defendants, and they were taken to the hospital and interviewed by Defendants' investigators about the sexual assault. Upon Plaintiff's release from the hospital, they were returned to the Erie County Holding Center.

3.     Defendants and their supervisory officials, line officers, and administrative staff personally facilitated said rape and sexual abuse by acting recklessly and being deliberately indifferent to the reasonably foreseeable danger of assigning Plaintiff to a general population mental health unit cell, in failing to exercise reasonable caution in classifying and housing Plaintiff, in making inadequate and/or predictable rounds, and otherwise failing to take reasonable and necessary measures to protect Plaintiff from foreseeable harm, as alleged *infra*.

4.     As a result of the acts and omissions alleged herein, Plaintiff suffered and continues to suffer from significant bodily injuries, as well as psychological and emotional injuries.

5.     Plaintiff also asserts supplemental state law claims of (a) assault and battery, (b) negligent screening, hiring, training, supervision, and retention, (c) negligence, and (d) intentional and negligent infliction of emotional distress.

## JURISDICTION AND VENUE

6.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States of America.

7.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

8.      This Court has supplemental jurisdiction over Plaintiff's claims which arise under New York state law pursuant to 28 U.S.C. § 1367.

9.      This Court has personal jurisdiction over this action because, as detailed below, at least one of the defendants resides in the State of New York.

10.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) as all Defendants are residents of New York and, pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## **PARTIES**

11.     At all times alleged herein, Plaintiff is a natural person who resides in Binghamton, New York, which is located within Broome County, New York.

12.     At all times alleged herein, Defendant County of Erie ("County of Erie") was and is a municipal corporation, established and existing by virtue of the laws of the State of New York.

13.     At all times alleged herein, the County of Erie was and is responsible for the safety and well-being of individuals who are within the legal custody, care, and/or control of the County of Erie's numerous correctional facilities.

14.     At all times alleged herein, Defendant Erie County Sheriff's Office ("Erie Sheriff's Office") was and is the government agency responsible for the operation and management of the correctional facilities located within the County of Erie.

15.     At all times alleged herein, the Erie Sheriff's Office was and is responsible for the safety and well-being of individuals who are within the legal custody, care, and/or control of the County of Erie's numerous prison and correctional facilities.

16.    At all times alleged herein, the Erie County Holding Center ("Erie County Holding Center") was and is a pre-trial maximum security adult detention facility located in Buffalo, New York.

17.    At all times alleged herein, the Erie County Holding Center was and is responsible for the safety and well-being of individuals who are within its legal custody, care, and/or control.

18.    At all times alleged herein, Defendant Classification Officer Ganci (#1239) was responsible for the safety and well-being of individuals who are within the legal custody, care, and/or control of the Erie County Holding Center, and charged with performing *inter alia* a proper and thorough screening, classification, and housing assignment of inmates, including but not limited to Plaintiff.

19.    At all times alleged herein, Defendants John and Jane Does #1-99 are additional individuals who were and are responsible for the safety and well-being of individuals who are within the legal custody, care, and/or control of the Erie County Holding Center, but whose names and/or titles are not yet known to Plaintiff.

### STATEMENT OF FACTS

20.    On or about February 8, 2024, Plaintiff was incarcerated at the Erie County Holding Center.

21.    During Plaintiff's intake at the Erie County Holding Center, Plaintiff reported to, upon information and belief, defendant Booking Deputy D. Roth (#1425) that they identify as transgender and nonbinary.

22.    During Plaintiff's intake at the Erie County Holding Center, Plaintiff reported to, upon information and belief, defendant Booking Deputy D. Roth (#1425) that their gender expression is "feminine."

23.    During Plaintiff's intake at the Erie County Holding Center, Plaintiff reported to, upon information and belief, defendant Booking Deputy D. Roth (#1425) that they had been previously sexually assaulted while incarcerated.

24.    During Plaintiff's intake at the Erie County Holding Center, Plaintiff reported to, upon information and belief, Intake nurse Andrea Caleca that they had been previously sexually assaulted while incarcerated and she documented in her report that Plaintiff was a victim of sexual abuse.

25.    During Plaintiff's intake at the Erie County Holding Center, Plaintiff reported to, upon information and belief, defendant Booking Deputy D. Roth (#1425) that, to the best of Plaintiff's knowledge and understanding, the aforementioned sexual assaults in custody occurred because Plaintiff identifies as transgender and/or nonbinary.

26.    During Plaintiff's intake at the Erie County Holding Center, Plaintiff reported to, upon information and belief, defendant Booking Deputy D. Roth (#1425) that, due to Plaintiff's identifying as transgender and/or nonbinary and the aforementioned sexual assault, Plaintiff was concerned for their safety at the Erie County Holding Center and requested to be housed with women.

27.    Due to systemic deficiencies in the Defendants County of Erie, Erie County Sheriff's Office, and Erie County Holding Center's Initial Classification forms and processes, Plaintiff's prior history of sexual abuse in custody was not recorded in the defendants' records as same was limited to a five-year lookback period.

28.    Inasmuch as Plaintiff's prior history of sexual victimization while in custody was greater than five (5) years prior, same was not documented in the defendants' classification instruments and thus removed from consideration in the classification score given to Plaintiff.

29.     Due to systemic deficiencies in the Defendants County of Erie, Erie County Sheriff's Office, and Erie County Holding Center's Initial Classification forms and processes, Plaintiff's prior history of hostile relationships while in custody was not recorded in the defendants' records as same was limited to a five-year lookback period.

30.     Inasmuch as Plaintiff's prior history of hostile relationships while in custody was greater than five (5) years prior, same was not documented in the defendants' classification instruments and thus removed from consideration in the classification score given to Plaintiff.

31.     Had Plaintiff's entire "history of hostile relationships" and "propensity for victimization" in custody been able to be reported and considered in the Defendants County of Erie, Erie County Sheriff's Office, and Erie County Holding Center's Initial Classification forms and processes, Plaintiff would have received a higher initial classification score and designated as a Level 2 or Level 3 custody level, rather than Level 1. This distinction meant that Plaintiff was directed to be housed in a less secure area than warranted under the circumstances.

32.     Due to Plaintiff's concerns, Plaintiff made a reasonable request to be placed in protective custody and/or to receive other reasonable housing accommodations to ensure their safety from sexual extorsion and victimization.

33.     Plaintiff's request to be placed in protective custody and/or to receive other reasonable housing accommodation was denied by Defendants and/or their agents, servants, or employees.

34.     Based upon *inter alia* industry standards and best practices, governmental studies and reports, and advocacy efforts by various organizations, Defendants knew or should have known that Plaintiff's transgender status and prior history of sexual abuse in custody placed them

at heightened risk of future sexual victimization within the confines of the Erie County Holding Center.

35.    Defendants and/or their agents, servants, or employees had actual notice of the high likelihood that Plaintiff would be subject to sexual assaults and abuse within the confines of the Erie County Holding Center.

36.    Defendants and/or their agents, servants, or employees had constructive notice of the high likelihood that Plaintiff would be subject to sexual assaults and abuse within the confines of the Erie County Holding Center.

37.    Following Plaintiff's intake on February 8, 2024, Plaintiff was placed in a close observation mental health housing unit.

38.    Inexplicably, on February 14, 2024, despite being placed on notice that Plaintiff was at heightened risk of sexual victimization while in their custody, control, and care, Defendant Classification Officer Ganci (hereinafter "Dep. Ganci") recommended that Plaintiff's classification be overridden and they be transferred to a less secure housing unit. Consistent with same, Plaintiff was transferred that same day from a close observation cell to a cell amongst the general population. The following day, Plaintiff was raped by inmate Tommy Martin (hereinafter "Martin" or "assailant").

39.    Despite Plaintiff's statements of specific concerns for their safety made on February 14, 2024 to Dep. Ganci, Dep. Ganci indicated that no "verified security related factors exist that preclude assigning this inmate to housing consistent with the recommended initial Classification Category" and that there is no "other verified information pertaining to the safety and welfare of this inmate that suggests that this inmate should not be housed in General Population or assigned

to housing consistent with his or her Initial Classification Category." Dep. Ganci's recommendation was approved by the Classification Supervisor.

40.     On February 15, 2024, Plaintiff was in their cell and the cell doors were left open.

41.     Due to inadequate security and/or failures to follow security procedures by the assigned housing unit officers (i.e., Defendants John and Jane Does), the cell doors in that housing unit were left open and inmates were able to move freely about the housing unit.

42.     During the aforementioned period, and due to inadequate security and/or failures to follow security procedures by the assigned housing unit officers (i.e., Defendants John and Jane Does), Martin entered Plaintiff's cell, without Plaintiff's consent, and raped and sexually assaulted Plaintiff.

43.     Inmates were not allowed to enter other inmate's cells.

44.     Upon entering Plaintiff's cell, Martin hung a sheet up in order to conceal his rape of Plaintiff.

45.     Inmates were not allowed to hang anything that would conceal an officer's ability to see into a cell.

46.     Had the assigned housing unit officers been reasonably diligent in their custody, control, and care of the housing unit and the inmates therein, Plaintiff's rape and sexual assault would not have occurred.

47.     Instead, the assigned housing unit officers were deliberately indifferent, grossly negligent, and criminally reckless in allowing an inmate to hang a sheet in Plaintiff's cell and then enter Plaintiff's cell – both of which posed immediate and specific risks of harm to Plaintiff and were in violation of facility policy and practices.

48. The aforementioned rape and sexual assault on Plaintiff included both forced anal sex and oral sex.

49. The aforementioned rape and sexual assault on Plaintiff was preventable had the assigned officers exercised appropriate care and supervision.

50. Plaintiff reported the incident to a correction officer.

51. Plaintiff was then taken to Erie County Medical Center for a rape kit.

52. Upon information and belief, forensic evidence collected from Plaintiff's person included Martin's deoxyribonucleic acid ("DNA").

53. As a result of the aforementioned acts of sexual assault and abuse, Plaintiff sustained physical, psychological, and emotional injuries.

54. Prior to and on February 15, 2024, Defendants County of Erie, Erie County Sheriff's Office, and Erie County Holding Center knew that Martin had mental health issues that made him a danger to himself and other inmates and was classified as "special needs."

55. Prior to and on February 15, 2024, Defendants County of Erie, Erie County Sheriff's Office, and Erie County Holding Center knew that Martin had disciplinary problems and substance abuse issues that made him a danger to himself and other inmates.

56. Prior to February 15, 2024, Defendants County of Erie, Erie County Sheriff's Office, Erie County Holding Center, and RN Andrew "Doe" knew that Plaintiff had mental health issues and designated Plaintiff for "urgent" forensic mental health referral at the time of their intake into the facility.

57. At all times alleged herein, Defendants owed a duty of care to Plaintiff in providing and placing them in a safe facility, to protect them from foreseeable harm, to monitor said facility

- 9 -

in order to prevent sexual abuse thereat, and to provide for their safety, security, care, and well-being.

58. At all times alleged herein, each Defendant had a non-delegable duty to use reasonable care in their supervision and monitoring of the jails at which they detained individuals, to the individuals themselves; to develop and implement policies, practices, procedures, guidelines, directives, and training to prevent sexual assault and abuse of individuals confined to their jails; to fully and faithfully investigate allegations of sexual assault and abuse; to stop sexual assaults and abusive behavior; to prevent future sexual assault and abusive behavior; to train their employees, agents, and servants in the prevention of sexual assaults and sexual abuse; and in avoiding the placement of inmates, like Plaintiff, in a trap-like conditions.

59. Upon information and belief, Defendants, their agents, servants, and employees, knew or should have known about the dangerous propensities of their inmates to sexually assault and abuse other inmates, especially Plaintiff.

60. By reason of the foregoing, Defendants were and are liable for the acts and omissions that occurred at their jail, which left Plaintiff with severe and permanent physical, psychological, and emotional injuries.

## FIRST COUNT

## VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. §1983

61. Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if same were fully set forth herein.

62. As alleged above, the Defendants, acting under the color of law, violated Plaintiff's clearly established constitutional rights in that they failed to intervene on Plaintiff's behalf in the instances alleged herein despite having time and opportunity to do so.

63. On the date of incident, Defendants were required to abide by Erie County Sheriff's Office Policy No. 09-02-01 (eff. July 1, 2021; rev. June 5, 2023), entitled "Admissions and Discharges – Transgender, Intersex, Gender Non-Binary, and Gender Nonconforming Inmates."

64. Pursuant to said policy, inmates were to be housed with persons whose gender is most closely aligned with their stated gender, unless they opt out of such placement in writing or documented evidence supports that doing so would jeopardize the safety of the inmate or others. Plaintiff's designated housing was not consistent with his policy.

65. Pursuant to said policy, classification staff (i.e., defendants Roth and Ganci) were required to thoroughly review the information provided by Plaintiff in the Sexual Orientation and Gender Identity/Expression (SOGIE) Intake Information Form and record all pertinent information into the classification record. Plaintiff's SOGIE form did not record all pertinent information consistent with this policy.

66. Contrary to said policy, classification staff did not have specific, trauma informed discussions with Plaintiff about past instances of sexual abuse.

67. Contrary to said policy, classification staff did not document all information pertinent to Plaintiff's classification.

68. Contrary to said policy, classification staff did not complete the Sexual Victimization Screening Instrument for Plaintiff.

69.     Contrary to said policy, defendants Roth and Ganci made unilateral decisions as to Plaintiff's housing assignment, not an interdisciplinary committee comprised of members of the sexual abuse / PREA response team.

70.     Contrary to said policy, Plaintiff's previous institutional records and housing history were not seriously considered in determining Plaintiff's housing assignment.

71.     Contrary to said policy, Plaintiff's previous history of victimization was not seriously considered in determining Plaintiff's housing assignment.

72.     Contrary to said policy, how Plaintiff identifies and lives when not incarcerated was not seriously considered in determining Plaintiff's housing assignment.

73.     Contrary to said policy, Plaintiff's medical and mental health needs were not seriously considered in determining Plaintiff's housing assignment.

74.     Contrary to said policy, the requirements of 9 NYCRR 7013 were not seriously considered in determining Plaintiff's housing assignment.

75.     Contrary to said policy, the decision to house Plaintiff in a manner not consistent with their expressed preference was not in writing and classification staff did not document the specific safety, health, security and welfare concerns giving rise to this contrary determination.

76.     The failures of defendants Roth, Ganci, and any other classification staff to abide by Erie County Sheriff's Office Policy No. 09-02-01 and/or 9 NYCRR 7013 was due, in whole or in part, to a lack of adequate training by defendants County of Erie, the Erie County Sheriff's Office, and/or the Erie County Holding Center as to said policies and legal protections afforded to Plaintiff.

77.     The failures of defendants Roth, Ganci, and any other classification staff to abide by Erie County Sheriff's Office Policy No. 09-02-01 and/or 9 NYCRR 7013 was due, in whole or

in part, to a lack of adequate supervision by defendants County of Erie, the Erie County Sheriff's Office, and/or the Erie County Holding Center as to said policies and legal protections afforded to Plaintiff.

78.     The failures of defendants Roth, Ganci, and any other classification staff to abide by Erie County Sheriff's Office Policy No. 09-02-01 and/or 9 NYCRR 7013 was due, in whole or in part, to engrained culture of deliberate indifference to the rights and safety of transgender and gender non-conforming inmates.

79.     The failures of defendants Roth, Ganci, and any other classification staff to abide by Erie County Sheriff's Office Policy No. 09-02-01 and/or 9 NYCRR 7013 was due, in whole or in part, to an unconstitutional pattern and practice of deliberate indifference to the rights and safety of transgender and gender non-conforming inmates.

80.     Defendants Roth and Ganci's failures to act consistent with the aforesaid policies were the moving force behind the constitutional violations suffered by Plaintiff.

81.     Defendants John and Jane Doe officers were deliberately indifferent to Plaintiff's safety and security, recklessly failed to provide adequate security to Plaintiff's housing unit prior to and at the time of the alleged incident, and were the moving force behind the constitutional violations suffered by Plaintiff.

82.     Defendants County of Erie, the Erie County Sheriff's Office, and/or the Erie County Holding Center's failure to train and supervise its classification staff, housing unit officers, and supervisory officials, including but not limited to defendants Roth, Ganci and John and Jane Doe officers, allowed a culture of deliberate indifference to the rights and safety of transgender and gender non-conforming inmates to permeate the line officers and was the moving force behind the constitutional violations suffered by Plaintiff.

83.     Defendants County of Erie, the Erie County Sheriff's Office, and/or the Erie County Holding Center tacitly authorized an unconstitutional pattern and practice of deliberate indifference to the rights and safety of transgender and gender non-conforming inmates, which became the moving force behind the constitutional violations suffered by Plaintiff.

84.     As set forth above, Defendants acted with deliberate indifference to Plaintiff's safety and security by allowing sexual predators to be and remain assigned to Plaintiff's cell and housing unit; by allowing sexual predators to have unfettered access to Plaintiff; by failing to train staff to recognize the signs of coercion and sexual abuse; by failing to train staff to recognize and report patterns of certain inmates that are engaging in sexually abusive tactics; by failing to recognize and appreciate the specific risks that transgender inmates and sexual abuse victims face in jail and to implement policies and practices to improve their safety; by failing to identify a systemic problem of transgender inmates being sexually victimized in their facilities; by allowing a custom and practice that permitted mandatory reporters to avoid reporting allegations of sexual abuse without consequences; by failing to timely implement policies consistent with PREA standards; by failing to screen employees through background checks and other methods; by permitting their supervisory officials and staff to operate in the manner alleged herein; by failing to monitor (through cameras or otherwise) known at-risk areas; by failing to implement meaningful consequences for officers and staff who fail to report suspected and/or witnessed rape and sexual abuse; by failing to take reasonable measures to ensure the safety and security of their transgender prisoner population; by failing to implement adequate and effective training, supervision and monitoring policies; and in being otherwise deliberately indifferent in their acts and omissions alleged herein.

85.     By their policies, practices, acts, and omissions, Defendants caused Plaintiff to be subjected to forcible touching, sexual assault, rape and be otherwise sexually victimized, in violation of their due process rights under the Fourth, Fifth and/or Fourteenth Amendments to the United States Constitution.

86.     The consistent ignoring by Defendants and their supervisory officials and staff of persistent and widespread pattern of sexual abuse, rape, and assaults, demonstrates a custom and practice of actual, or at least constructive, acquiescence to inmate-on-inmate sexual victimization in their jails.

87.     Plaintiff's assailant's abusive conduct towards Plaintiff, though it occurred within a cell, was hardly private or secluded and should have been readily apparent to Defendants, their agents, servants, and employees, as (a) the cell was located in close proximity to the officers' station, (b) supervisors and staff were able and required to walk by as they pleased, (c) supervisors and staff were able to hear what was happening in the cell, (d) supervisors and staff were able to see that another inmate improperly entered Plaintiff's cell, and (e) supervisors and staff were aware or should have been aware that inmates were congregating around Plaintiff's cell, lingering there, and/or spending too much time in Plaintiff's cell.

88.     Defendants have failed to employ obvious measures to reduce the risk of rape and sexual abuse of inmates, such as heightened monitoring of behavior indicative of ongoing sexual abuse, appropriately placed and functional surveillance cameras, exit interviews of inmates upon transfer or release, random interviews of staff, and more frequent, unannounced rounds by supervisory officials and staff.

89.     Defendants have failed to train correction officers, mental health staff, and administrators to take recognize the signs of sexual victimization, the risks of sexual victimization

to the transgender prisoner population, and ways to mitigate these risks through greater oversight, supervision, and decision-making in custody and housing of transgender inmates.

90.     Defendants have failed to train correction officers, mental health staff, administrators, and investigators to take reports of rape and sexual abuse seriously and to give adequate weight to the credibility of inmate witnesses.

91.     Pursuant to Defendants' policy and practice, inmates who report rape and sexual abuse are not protected from retaliation.

92.     Defendants do not consistently investigate reports of rape or sexual abuse in a prompt or thorough manner, if at all. Once an inmate reports that he or she has been raped or otherwise sexually abused, weeks can pass before an investigation begins, if at all. Regardless of what an investigation reveals, the subjects are rarely disciplined, and inmates are rarely informed of the outcome.

93.     Defendants treat inmates as adversaries rather than allies. In the case of Plaintiff, for example, Defendants failed to document or investigate allegations made to officers and staff.

94.     The failures and refusals by Defendants to hold their officers and staff accountable for inmate-on-inmate sexual violence was the moving force and proximate cause of the injuries and abuses sustained by the plaintiff, and undoubtedly dozens of others.

95.     The pattern of unchecked, inmate-on-inmate sexual abuse and the persistent failure or refusal of Defendants to adequately supervise these persons and to take action to curb the misconduct, demonstrates a policy of deliberate indifference which tacitly authorized the abuses claimed by the plaintiff.

96.     The foregoing customs, policies, usages, practices, procedures and rules of Defendants constituted deliberate indifference to the safety, well-being and constitutional rights of

the plaintiff and were the moving force and proximate cause of the constitutional violations suffered by the plaintiff as alleged herein.

97.     The foregoing customs, policies, usages, practices, procedures and rules of Defendants were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

98.     As set forth above, Defendants failed to protect Plaintiff from known and foreseeable harm.

99.     As set forth above, Defendants failed to intervene, mitigate and/or stop the events alleged herein.

100.    As set forth above, Defendants knew of and consciously disregarded an excessive risk to Plaintiff's health and safety.

101.    Due to Defendants' practices and policies aforesaid, Plaintiff was caused to suffer in the past, and will continue to sustain in the future, physical injury, pain and suffering, serious and severe psychological and emotional distress, mental anguish, shame, embarrassment, and humiliation.

102.    Furthermore, Defendants were at all times alleged herein municipal policymakers.

103.    Defendants were at all times alleged herein charged with drafting, implementing, and promulgating policies and procedures in and for the Erie County Holding Center.

104.    Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the active supervision of housing units and the inmates confined therein.

105.    Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the direct supervision of housing units and the inmates confined therein.

106. Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the requirement to conduct supervisory tours at no less than thirty (30) minute intervals.

107. Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the requirement to conduct inmate intakes, screenings, classifications, and housing assignments consistent with the Prison Rape Elimination Act.

108. Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the requirement to conduct inmate intakes, screenings, classifications, and housing assignments consistent with minimizing sexual victimization of inmates by other inmates.

109. Defendants failed to provide adequate training and retraining to their officers and supervisory staff on policies and procedures regarding the requirement that housing unit officers and supervisors are to conduct supervisory tours such that these officers and supervisors were untrained and did not know what their lawful responsibilities were in the given situation.

110. Defendants failed to provide adequate training and retraining to their officers and supervisory staff on policies and procedures regarding the requirement that inmate intakes, screenings, classifications, and housing assignments must be consistent with the Prison Rape Elimination Act.

111. Defendants failed to provide adequate training and retraining to their officers and supervisory staff on policies and procedures regarding the requirement that inmate intakes, screenings, classifications, and housing assignments must be consistent with minimizing sexual victimization of inmates by other inmates.

112. Any training provided to officers and supervisory staff by Defendants, as alleged herein, was not sufficient to meet minimum standards and was so deficient that officers and supervisory staff would not be able to articulate procedures.

113. Defendants' widespread practice of not actively supervising their housing units and not conducting supervisory tours every thirty (30) minutes is so permanent and well-settled as to constitute an official policy, custom, or usage.

114. Defendants' widespread practice of failing to adequately train, retrain and supervise housing unit officers is so permanent and well-settled as to constitute an official policy, custom, or usage.

115. Had Defendants' officers and supervisory staff, including but not limited to the Jane and John Doe Defendants, been adequately trained and supervised in all matters of supervision and rounds necessary to perform their daily job duties and functions, the subject incidents would have been avoided. Thus, this long-standing failure and/or refusal to supervise and train the corrections officers and supervisory staff under its/their control, as alleged herein, is now so institutionalized as to constitute a policy or custom of said defendants which caused or contributed to the subject incidents.

116. The failures and refusals by Defendants to hold their officers and supervisory staff accountable was the moving force and proximate cause of the injuries and abuses sustained by the plaintiff, and undoubtedly countless other inmates.

117. Through promotions and other financial and status incentives, Defendants have the power to reward officers and supervisory staff who perform their jobs adequately and to punish – or at the very least fail to reward – those who do not. Defendants' acts and omissions have created and maintained the perception that supervisors, officers and staff who turn a blind eye towards

failing to inadequate supervision and sexual harassment, intimidation, abuse and rape, and fail to report or investigate these incidents, will suffer no damage to his or her career or financial penalty.

118.    As a direct and proximate result of the Defendants, their agents, servants, and employees', acts, omissions, and failures, Plaintiff suffered the consequences and damages aforesaid.

119.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe physical, psychological and emotional injuries.

120.    As a result of the foregoing, Plaintiff is entitled to an award of compensatory damages, punitive damages, and reasonable attorney's fees, together with costs, expert fees, and disbursements pursuant to 42 U.S.C. §1983.

## PENDANT STATE LAW CLAIMS

121.    On December 2, 2024, Plaintiff filed a special proceeding in the Supreme Court of the State of New York, County of Erie, under index number 817723/2024, seeking leave to serve a late Notice of Claim on Defendants.

122.    On February 4, 2025, the Supreme Court of the State of New York granted Plaintiff leave to serve a late Notice of Claim on Defendants and directed Plaintiff to serve same on Defendants on or before February 28, 2025.

123.    On or about February 12, 2025, Plaintiff served a Notice of Claim on Defendants, which set forth the date, time, place and manner of the incident and the injuries sustained by Plaintiff as a result of the incident.

124.    More than thirty (30) days have elapsed since Plaintiff served the Notice of Claim on Defendants, and Defendants have neglected and refused to make an adjustment thereof.

125.    This action is commenced within one year and ninety (90) days of the incident that gave rise to the allegations contained herein.

126.    The limitations on liability set forth in CPLR § 1601 do not apply to this action by reason of one or more of the exceptions set forth in CPLR § 1602.

## FIRST COUNT UNDER THE LAWS OF THE STATE OF NEW YORK

### NEGLIGENCE

127.    Plaintiff repeats and realleges each and every paragraph contained above with the same force and effect as if all such paragraphs were fully set forth herein.

128.    At all times alleged herein, Defendants, their agents, servants, and employees, owned Erie County Holding Center.

129.    At all times alleged herein, Defendants, their agents, servants, and employees, operated Erie County Holding Center.

130.    At all times alleged herein, Defendants, their agents, servants, and employees, maintained the Erie County Holding Center.

131.    At all times alleged herein, Defendants, their agents, servants, and employees, supervised the Erie County Holding Center and the inmates and staff assigned thereto.

132.    At all times alleged herein, Defendants, their agents, servants, and employees, controlled the Erie County Holding Center and the inmates and staff assigned thereto.

133.    At all times alleged herein, Defendants, their agents, servants, and employees, managed the Erie County Holding Center and the inmates and staff assigned thereto.

134.    Defendants each owed a duty of care to keep all individuals in their custody and care, including but not limited to Plaintiff, safe from sexual assault and abuse by other inmates under their supervision and control.

135.   Defendants each owed a duty of care to keep all individuals in their custody and care, including Plaintiff, safe from sexual assault and abuse on its premises.

136.   Defendants each had a duty to supervise its facilities, including all of Plaintiff's assigned housing units.

137.   Each Defendant, their agents, servants, and employees, had a duty to supervise inmates in an effort to prevent and stop physical and sexual assault and abuse amongst inmates.

138.   At all times alleged herein, Defendants, their agents, servants, and employees, breached their aforesaid duties in a negligent, reckless, and careless manner.

139.   Defendants, their agents, servants, and employees, knew or in the exercise of reasonable care should have known that the facility and housing unit in which Plaintiff was placed, was not safe and that it was reasonably foreseeable that an incarcerated individual, such as Plaintiff, would be sexually assaulted, and/or abused.

140.   At all times alleged herein, Defendants, their agents, servants, and employees, knew or in the exercise of reasonable care should have known that Plaintiff's sexual assailants had a propensity for the conduct which caused injury to Plaintiff, particularly their propensity to physically and sexually assault and abuse other inmates.

141.   At all times alleged herein, it was reasonably foreseeable to Defendants, their agents, servants, and employees, that Plaintiff's sexual assailants would commit acts of physical and sexual assault and abuse on other inmate and Plaintiff in particular.

142.   At all times alleged herein, it was reasonably foreseeable to Defendants, their agents, servants, and employees, that given Plaintiff's transgender status, there was a dangerous and high risk that Plaintiff would become a victim to acts of physical and sexual abuse.

- 22 -

143. At all times alleged herein, it was reasonably foreseeable to Defendants, their agents, servants, and employees, that if Plaintiff was placed in protective custody or given reasonable housing accommodations, Plaintiff would not have been subject to physical and sexual assault and abuse.

144. Despite having actual or constructive notice, Defendants, provided and permitted Plaintiff's sexual assailants to have unfettered and unsupervised access to Plaintiff, and gave them the opportunity to commit the foreseeable acts of sexual abuse and assault aforesaid.

145. Further, upon information and belief, at all times alleged herein, Defendants knew or in the exercise of reasonable care should have known, of the chronic flaws and deficiencies at their facilities that placed Plaintiff, and other men and women in their custody and control, at substantial risk of physical and sexual abuse (*e.g.*, substandard safety and security of individuals in custody, inadequate training and supervision of staff, poor administrative oversight, faithless and ineffective investigations into reported instances of sexual abuse, and/or refer substantiated allegations of sexual abuse to the police and/or district attorney's office thereby letting abusive conduct continue and emboldening the perpetrators, etc.) and yet failed to address same in any reasonable manner consistent with its duties to the individuals confined to Defendants' custody, control, and care.

146. As a result of Defendants, their agents, servants and employees' negligent, reckless, and careless acts and omissions in the instances aforesaid, they breached their duty of care to Plaintiff and caused Plaintiff to be sexually assaulted and abused.

147. Defendants were each negligent, grossly negligent, and/or reckless in the instance in their ownership, operation, supervision, management, inspection, use, and/or control of the Erie County Holding Center, its housing units, the officers assigned thereto, and the incarcerated

- 23 -

individuals confined thereat; in operating the Erie County Holding Center with total disregard for the health, safety and welfare of Plaintiff; in failing to provide reasonably safe housing to Plaintiff; in exposing Plaintiff to a foreseeable and unreasonable risk of injury and harm; in failing to properly train and supervise their agents, representative and/or employees regarding PREA standards, implementing PREA guidelines, intaking new inmates, classifying inmates, and assigning inmates to housing units in accordance with their security classification; in the negligent infliction of emotional distress; in failing to provide adequate protection and security to inmates in their custody; in being deliberately indifferent to a substantial risk of serious harm to Plaintiff; in violating the Fourteenth Amendment's prohibition on cruel and unusual punishment; in knowing that Plaintiff faced a substantial risk of serious harm and disregarding that risk by failing to take reasonable measures to abate it or prevent it; in housing Plaintiff with an inmate with a known history of sexual violence; in placing a known predator in an unrestricted housing unit where he would have access to Plaintiff; in failing to provide or enforce a minimum standard of health and safety protection; in failing to prevent a violent sexual attack by an inmate in their custody; in failing to supervise inmates; in failing to segregate a sexual predator from susceptible inmates; by permitting a sexual predator to co-mingle with a vulnerable inmate population; by placing a sexual predator in a minimum security facility; for poor planning of inmate safety in the event of a violent attack from an inmate; in failing to take corrective actions to keep the premises safe for all inmates; in having inadequate supervision and monitoring of the inmates; in having inadequate supervision and monitoring of the premises; in failing to properly maintain the peace and order of the premises; in failing to follow and in violating their own policies, procedures, and guidelines; in the negligent planning and design of the premises to allow one inmate to attack another; in failing to give Plaintiff adequate and timely signal, notice, or warning of said conditions and/or the danger posed

to Plaintiff; in causing, allowing and/or permitting the existence of a condition which constituted a trap, nuisance, menace and danger to persons on said premises; in having incompetent employees, servants and/or agents; in failing to use due care and caution in the circumstances, in that Defendants violated the applicable statutes, rules and ordinances including but not limited to the Prison Rape Elimination Act; in violating the civil rights of Plaintiff; in failing to remedy a hazardous condition within a reasonable time; in launching a force or instrument of harm; in creating a hazardous condition; in failing to remove a known predator from Plaintiff's housing area, or vice versa; in failing to secure a known predator in a locked cell; in failing to have an adequate inmate, security screening, housing, and/or disciplinary process in place so as to avoid a known predator from being housed and/or allowed to remain in Plaintiff's housing area and/or within the vicinity of Plaintiff; in failing to follow security recommendations by assigning a known predator to Plaintiff's housing area and/or allowing him to be and remain in the vicinity of Plaintiff; in failing to truthfully and faithfully report all instances of violent acts by a known violent predator prior to the date of incident; in failing to truthfully and faithfully investigate all instances of violent acts by a known violent predator prior to the date of incident; in placing a known violent predator in Plaintiff's housing area and/or allowing said inmate to be and remain in the vicinity of Plaintiff despite having knowledge and notice of the violent and dangerous propensities said inmate possessed to the general population and to Plaintiff in particular; in failing to take timely and appropriate corrective action against a known violent predator prior to him sexually assaulting Plaintiff, despite having notice, time, and opportunity to do so; in failing to take timely and appropriate action against a known violent predator upon him harassing, accosting, and assaulting other inmates in the days, hours, and minutes prior to said inmate attacking and injuring Plaintiff; in that the correction officers assigned to the subject housing area were often not on post, were

- 25 -

inattentive to inmates and the unit while at their post, failed to make unannounced rounds, failed to monitor video surveillance cameras, failed to secure cell doors and manually confirm they were secure, routinely used unapproved personal electronic devices while on duty, and/or failed to log and document all reportable incidents; in that the defendant correction officers assigned to the subject housing area were not paying attention and/or distracted in the hours and minutes prior to the subject incident; in failing to comply with separation orders; and in otherwise being negligent, grossly negligent, and/or reckless in this instance.

148.    As a result of the negligent acts and omissions of Defendants, their agents, servants and employees, Plaintiff was caused to suffer in the past, and will continue to sustain in the future, physical injury, pain and suffering, serious and severe psychological and emotional distress, mental anguish, embarrassment, and humiliation.

149.    By reason of the foregoing, Plaintiff is entitled to an award of compensatory damages in such an amount that a finder of fact would find fair, just, and equitable.

## SECOND COUNT UNDER THE LAWS OF THE STATE OF NEW YORK
### DOCTRINE OF *RESPONDEAT SUPERIOR*

150.    Plaintiff repeats and realleges each and every paragraph contained above with the same force and effect as if all such paragraphs were fully set forth herein.

151.    Under the doctrine of *respondeat superior*, an employer will be held vicariously liable for the negligence of an employee causing injuries to third parties, if at the time of the occurrence, the employee(s) was acting within the scope of his or her employment.

152.    In the matter at hand, a master-servant relationship existed between the respective Defendants and the employees who committed the aforementioned tortious acts and/or omissions.

153.    The aforementioned tortious acts and/or omissions occurred within the scope of employment as between the respective Defendant and their agents, servants, and/or employees.

154.    As a result of the aforementioned tortious acts and/or omissions of Defendants' agents, servants, and employees, Plaintiff was caused to suffer in the past, and will continue to sustain in the future, physical injury, pain and suffering, serious and severe psychological and emotional distress, mental anguish, embarrassment, and humiliation.

155.    By reason of the foregoing, Plaintiff is entitled to an award of compensatory damages in such an amount that a finder of fact would find fair, just, and equitable.

## THIRD COUNT UNDER THE LAWS OF THE STATE OF NEW YORK

### NEGLIGENT HIRING, TRAINING, RETENTION, AND SUPERVISION OF EMPLOYEES

156.    Plaintiff repeats and realleges each and every paragraph contained above with the same force and effect as if all such paragraphs were fully set forth herein.

157.    Defendants were negligent in hiring, training, retaining and supervising its personnel, and those charged with supervising Plaintiff's housing unit and the inmates in their custody and care, as these individuals were careless, unskillful, negligent, and reckless in discharging their day-to-day responsibilities, and failed to possess the requisite knowledge and skill to ensure the safety of prisoners under their charge.

158.    It was reasonably foreseeable to Defendants that given their agents, servants and employees careless, unskillful, negligent, and reckless behavior, Plaintiff had a dangerous and high likelihood of being sexually assaulted and abused, yet Defendants failed to train their staff to recognize and prevent physical and sexual abuse; failed to supervise; failed to monitor the interactions between inmates; failed to implement policies and procedures to mitigate sexual

assault and abuse by inmates; and failed to faithfully investigate allegations of physical and sexual abuse.

159. As a direct and proximate result of the negligent hiring, supervision and retention of Defendants, Plaintiff was sexually assaulted and abused.

160. As a direct and proximate result of the negligent hiring, supervision and retention of Defendants, Plaintiff was caused to suffer in the past, and will continue to sustain in the future, physical injury pain and suffering, serious and severe psychological and emotional distress, mental anguish, embarrassment, and humiliation.

161. By reason of the foregoing, Plaintiff is entitled to an award of compensatory damages in such an amount that a finder of fact would find fair, just, and equitable.

## FOURTH COUNT UNDER THE LAWS OF THE STATE OF NEW YORK
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

162. Plaintiff repeats and realleges each and every paragraph contained above with the same force and effect as if all such paragraphs were fully set forth herein.

163. Defendants, their agents, servants, and/or employees, knew or reasonably should have known that their aforesaid failures would and did proximately result in physical and emotional distress to Plaintiff.

164. Defendants, their agents, servants, and/or employees, knew or reasonably should have known that the sexual assault and abuse would and did proximately result in physical and emotional distress to Plaintiff.

165. Defendants, their agents, servants, and/or employees, had the knowledge, power, ability, authority, and duty to intervene with and/or stop the improper conduct that resulted in

Plaintiff being sexually abused and assaulted by multiple inmates on each occasion Plaintiff was sexually assaulted and abused.

166. Despite said knowledge, power, ability, authority, and duty to intervene, Defendants, their agents, servants, and/or employees, negligently failed to act, stop, prevent and/or prohibit the improper conduct that resulted in the physical and sexual assault and abuse of Plaintiff.

167. By reason of the foregoing, Plaintiff is entitled to an award of compensatory damages against Defendants in such amount that a finder of fact would find fair, just, and equitable.

168. By reason of the foregoing, Plaintiff has been damaged in a substantial sum of money, said sum to be determined by a jury.

## FIFTH COUNT UNDER THE LAWS OF THE STATE OF NEW YORK

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

169. Plaintiff repeats and realleges each and every paragraph contained above with the same force and effect as if all such paragraphs were fully set forth herein.

170. Defendants, their agents, servants and/or employees, knew or reasonably should have known that their aforesaid failures would and did proximately result in physical and emotional distress to Plaintiff.

171. Defendants, their agents, servants and/or employees, knew or reasonably should have known that the sexual assault and abuse would and did proximately result in physical and emotional distress to Plaintiff.

172. Defendants, their agents, servants and/or employees, had the knowledge, power, ability, authority, and duty to intervene with and/or stop the improper conduct that resulted in Plaintiff being sexually abused and assaulted by multiple inmates on each occasion Plaintiff was sexually assaulted and abused.

173. Despite said knowledge, power, ability, authority, and duty to intervene, Defendants their agents, servants and/or employees, negligently failed to act, stop, prevent and/or prohibit the improper conduct that resulted in the physical and sexual assault and abuse of Plaintiff.

174. Defendants' conduct in this regard was intentional and outrageous.

175. Defendants' conduct in this regard was the proximate cause of Plaintiff's injuries as set forth herein.

176. Plaintiff has suffered severe distress as a result of Defendants' acts and omissions as set forth herein.

177. By reason of the foregoing, Plaintiff is entitled to an award of compensatory and punitive damages against Defendants in such amount that a finder of fact would find fair, just, and equitable.

178. By reason of the foregoing, Plaintiff has been damaged in a substantial sum of money, said sum to be determined by a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment declaring that Defendants negligently caused Plaintiff's injuries, an award of compensatory damages in an amount to be determined at trial, and an award of punitive damages in an amount to be determined at trial, all of which are individually greater than the minimum jurisdiction of this court, together with interest, fees, and costs, and such other and further relief that this Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff respectfully requests a trial by jury on all issues so triable.

- 31 -

**HELD & HINES, LLP**
*Attorneys for Plaintiff*

Dated: September 18, 2025

By:  */s/ Philip M. Hines*
Philip M. Hines, Esq.
622 Third Avenue, Suite 600
New York, New York 10017
T: (212) 696-4529
phines@heldhines.com

Brooklyn Office:
4815 Avenue N
Brooklyn, New York 11234
T: (718) 531-9700
F: (718) 444-5768